# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| CALVIN PETERSON, ) | |
| ) Plaintiff, ) | |
| ) vs. ) | 2:11-cv-00764-RCJ-CWH |
| ) NEW CASTLE CORP. d/b/a EXCALIBUR ) HOTEL CASINO, ) | **ORDER** |
| ) Defendants. ) | |

This case arises out of alleged race discrimination and unlawful retaliation. Pending before the Court is Defendant's Motion to Dismiss (ECF No. 10). For the reasons given herein, the Court grants the motion in part and denies it in part.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff Calvin Peterson has worked at the Excalibur Hotel Casino in Las Vegas, Nevada since 1990. (*See* Compl. ¶¶ 1–9, Mar. 23, 2011, ECF No. 1, at 5). In 2006, Plaintiff aspired to become a locksmith and began training himself and seeking out training at work. (*See id.* ¶¶ 13–15). Defendant opened a position in its locksmith shop in February 2007 and filled the position with a European-American employee over Plaintiff, who is African-American. (*See id.* ¶¶ 16–23). Defendant opened two more locksmith positions in November 2007, which it also filled with two European-American employees. (*See id.* ¶¶ 26–29). Plaintiff admits that the first European-American had more seniority than he did and that he didn't have five years of experience as a locksmith, as required for the positions that opened in November 2007, but he

believes he was discriminated against due to his race. (*See id.* ¶¶ 23, 27). In early 2008, two locksmith positions opened when one of Defendant's locksmiths was terminated and another was moved to a different department. (*See id.* ¶¶ 40–41). Defendant filled the two positions with European-American employees (at least one of whom had less seniority than Plaintiff) without even soliciting applications. (*See id.* ¶¶ 42–45).

On April 10, 2008, Plaintiff filed a charge of discrimination with the Nevada Equal Rights Commission ("NERC") alleging race discrimination, to which Defendant responded with a denial. (*Id.* ¶¶ 46–47). However, Defendant then solicited applications for one of the locksmith positions, and although Plaintiff was the most senior applicant, Defendant awarded the position to the less senior European-American employee who had previously been put in the position. (*Id.* ¶¶ 48–51). Plaintiff filed a union grievance, after which Defendant offered him a locksmith position in exchange for dropping his race discrimination charge with NERC. (*Id.* ¶¶ 52–55). Plaintiff refused to drop the charge out of fear that Defendant would retaliate against him afterwards, and after unsuccessfully attempting to convince him to accept the deal a second time, Defendant offered him the position unconditionally. (*Id.* ¶¶ 56–60).

On August 12, 2010, NERC determined that Plaintiff's race discrimination claim was supported by probable cause, and two weeks later Defendant again attempted to convince Plaintiff to drop the charge. (*See id.* ¶¶ 68–73). Plaintiff declined and told the human resources employee who had called him to his office that he didn't want to discuss the matter until the conciliation session the NERC had scheduled for September 13, 2010. (*See id.* ¶¶ 71–75). Plaintiff felt intimidated, so he hired counsel, and NERC rescheduled the conciliation for December 13, 2010. (*Id.* ¶¶ 76–77).

On November 4, 2010, Defendant's chief engineer called Plaintiff into his office and told him he was suspended without pay pending an investigation, which Plaintiff later learned arose out of accusations that he had entered work orders into a computer system at the behest of other

employees for work that had not been performed. (*See id.* ¶¶ 79–86). Plaintiff denied the accusations and noted that his supervisor had his password to the system. (*Id.* ¶¶ 87–88). On November 18, 2010, the NERC conciliation was rescheduled for January 4, 2011, but Defendant terminated Plaintiff on December 6, 2010. (*Id.* ¶¶ 93–94). On December 17, 2010, Plaintiff filed a new charge with NERC, alleging retaliation. (*Id.* ¶ 98).

NERC issued Plaintiff a right-to-sue letter ("RTS") with respect to EEOC Charge No. 34B-2011-00283 on February 15, 2011. (*See* RTS, Feb. 15, 2011, ECF No. 1, at 23). NERC issued Plaintiff an RTS with respect to EEOC Charge No. 34B-2008-01040 on March 10, 2011. (*See* RTS, Mar. 10, 2011, ECF No. 1, at 22). Plaintiff sued MGM Resorts International d.b.a. Excalibur Hotel Casino ("MGM") in state court on March 23, 2011. Defendants removed. The Complaint lists six causes of action: (1) race discrimination under Title VII and Nevada Revised Statutes ("NRS") section 613.330; (2) retaliation under Title VII and NRS section 613.330; (3) race discrimination under 42 U.S.C. § 1981; (4) negligent infliction of emotional distress ("NIED"); (5) negligent training and supervision ("NTS"); and (6) declaratory and injunctive relief. MGM moved to dismiss for failure to arbitrate the claims as required under a collective bargaining agreement (the "CBA"), and in the meantime the parties stipulated to substitute New Castle Corp. d.b.a. Excalibur Hotel Casino for MGM.

## II.     LEGAL STANDARDS

Motions to dismiss for failure to exhaust non-judicial remedies, such as arbitration requirements in collective bargaining agreements, are treated as "'non-enumerated' Rule 12(b) motion[s]." *Inlandboatmens Union of Pac. v. Dutra Grp.*, 279 F.3d 1075, 1078 & n.2 (9th Cir. 2002) (quoting *Ritza v. Int'l Longshoremen's & Warehousemen's Union*, 837 F.2d 365, 369 (9th Cir. 1988)). Non-exhaustion is a matter in abatement related to jurisdiction and properly addressed via a motion to dismiss but under which a district court is to examine and interpret the relevant arbitration clause and determine whether it requires arbitration of the claims as a matter

of law. *See id.* at 1078 n.2, 1083–84.

Arbitration clauses in collective bargaining agreements presumptively apply to any labor dispute requiring the interpretation of the agreement. *See id.* at 1078–79. However, a "general contractual provision" is insufficient to waive a statutorily protected right, and a waiver of the right to a judicial determination of employment discrimination claims must be "explicitly stated" and "clear and unmistakable." *Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 79–80 (1998) (quoting *Metro. Edison Co. v. NLRB*, 460 U.S. 693, 708 (1983)). Even an individual waiver, as opposed to waivers in collective bargaining agreements, must be "knowing." "[A] knowing waiver does not occur where neither the arbitration clauses nor any other written employment agreement expressly put the plaintiffs 'on notice that they were bound to arbitrate [employment discrimination] claims.'" *Renteria v. Prudential Ins. Co. of Am.*, 113 F.3d 1104, 1108 (9th Cir. 1997) (quoting *Prudential Ins. Co. of Am. v. Lai*, 42 F.3d 1299, 1305 (9th Cir. 1994)). "[A] collective-bargaining agreement that *clearly and unmistakably* requires union members to arbitrate ADEA claims is enforceable as a matter of federal law." *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 129 S. Ct. 1456, 1474 (2009) (emphasis added). Prior to *Pyett*, some Courts of Appeals, including the Second Circuit, had held that a union could never as a matter of law collectively bargain away the right to a judicial forum for congressionally created causes of action. The *Pyett* court resolved a split between the Courts of Appeals when it reversed the Second Circuit. *Pyett* did not abrogate *Wright*'s requirement of a clear waiver of the right to a judicial forum for statutorily created claims, and it did not change Ninth Circuit law, as the case is consistent with *Renteria*. The *Pyett* Court simply ruled that a union could bargain away its members' right to a judicial forum for congressionally created causes of action. It did not abrogate the "clear and unmistakable" requirement, and in fact, it restated the requirement. The Court refused tto address whether the particular arbitration provision in *Pyett* in fact contained a clear and unmistakable waiver, because both lower courts had assumed that it did, and the

1  plaintiffs had admitted the point to the Court of Appeals. *See id.* at 1473–74.

2  **III.   ANALYSIS**

3  Defendant moves to dismiss for failure to exhaust non-judicial remedies, i.e., failure to

4  arbitrate under the CBA.[1]  Defendant does not attack the Complaint on the merits in the present

5  motion.  The CBA contains an arbitration clause which reads in relevant part:

> A grievance shall be defined as a dispute regarding the interpretation and application of the provisions of this Agreement . . . alleging a violation of the terms and provisions of this Agreement.  However, disputes specifically excluded in other Articles of this Agreement from the grievance and arbitration procedure shall not be construed as falling within this definition.

9  (CBA art. XIV, § 14.01, Apr. 1, 2004 to Mar. 31, 2009, ECF No. 10-1, at 19).  The follow-on

10 CBA contains the same clause. (*See* CBA art. XIV, § 14.01, Apr. 1, 2009 to Mar. 31, 2011, ECF

11 No. 10-1, at 38).  Both CBAs contain articles prohibiting "discrimination against any individual

12 based upon race . . . ." (*See* CBA art. XIV, § 14.01, Apr. 1, 2004 to Mar. 31, 2009, ECF No. 10-

13 1, at 22; CBA art. XXVIII, § 28.01, Apr. 1, 2009 to Mar. 31, 2011, ECF No. 10-1, at 42).

14 The arbitration clause requires arbitration of the fourth and fifth claims for NIED and

15 NTS,[2] and the sixth nominal claim is not a separate cause of action, but part of the prayer for

16 relief.  The Court finds, however, that sections 14.01 and 28.01, taken together, are not explicit

17 enough to constitute a knowing waiver of the right to sue under Title VII, § 1981, and related

18 state discrimination laws.  Although the CBA itself prohibits discrimination, and the grievance

19 procedure under the CBA therefore can probably be invoked over discrimination claims, the

---

[1] Defendant adduces authenticated excerpts from the two versions of the CBA that were operative during the relevant span of time. (*See* Trimmer Decl., May 26, 2011, ECF No. 10-1).

[2] Without an allegation of physical harm, the fourth and fifth claims would fail on the merits in any case. *See Kennedy v. Carriage Cemetery Servs., Inc.*, 727 F. Supp. 2d 925, 934–35 (D. Nev. 2010) (NIED); *Hall v. Raley's*, No. 3:08-CV-00632-RCJ-VPC, 2010 WL 55332, at *9 (D. Nev. Jan. 6, 2010) (NTS).  Although emotional harm does not support a separate cause of action for NIED or NTS, it is potentially available *as a measure of damages* for other statutory or common law torts, whether adjudicated by this Court or an arbitrator. *See Kennedy*, 727 F. Supp. 2d at 934–35 (quoting *Shoen v. Amerco.*, 896 P.2d 469, 477 (Nev. 1995)).

1 language of the CBA nowhere explicitly indicates that the employee waives the right to sue
2 under Title VII or other anti-discrimination statutes. It does not mention these statutes by name,
3 and it does not even state generally that the right to litigate under discrimination statutes is
4 waived or must be arbitrated. At most, it provides an opportunity to arbitrate certain kinds of
5 discrimination claims that do not even perfectly overlap with the kinds of claims that can be
6 litigated under Title VII and similar statutes. The Court will therefore deny the motion to
7 dismiss as to the first through third claims under Title VII, NRS section 613.330, and § 1981.

8       At oral argument, the Court indicated that it would give the parties ten days to file blind
9 briefs concerning the manner in which Defendant had addressed such claims in the past. Only
10 Defendant has submitted a timely brief.[3] Defendant argues that Local 501 has lodged thirty-one
11 grievances against it since 2005, and that only two of those grievances (filed by the same
12 employee) concerned discrimination claims. The first grievance was a claim of race
13 discrimination arising out of an alleged denial of overtime hours, but the union withdrew the
14 grievance when it appeared it was without merit. The second grievance was a claim of race
15 discrimination arising out of a failure to promote. In that case, the employee also filed a charge
16 of discrimination with the NERC, resulting in a right-to-sue letter from the EEOC. The union
17 failed to prosecute that grievance to conclusion, and Defendant does not allege whether the
18 employee sued.

19       Defendant does not allege how many employees covered by the CBA have sued it under
20 Title VII since 2005 or the outcome of such suits. Defendant only recounts the two instances

---

[3] Plaintiff's counsel submitted a brief to chambers email without any certificate of service on Defendants, and without entering it into the docket. This brief is not only "blind," meaning no response is permitted, it is *ex parte*, meaning it is a communication to the Court without knowledge of the adversary. The Court did not mean to invite *ex parte* briefs. The Court will enter the brief into the docket *sua sponte* for the record. Essentially, Plaintiff argues that his union does not routinely submit race discrimination claims to arbitration, but encourages EEOC complaints instead. Plaintiff's counsel's own affidavit is attached, relating inadmissible hearsay evidence to this effect based on the purported comments of Plaintiff's union representative.

1 noted above. This is evidence only that the grievance process has been used twice in the last six
2 years in race discrimination claims. It does not show that such claims are never prosecuted in
3 court under Title VII. There is no evidence available on this point except Defendants' admission
4 that the NERC and EEOC processed at least one Title VII claim and issued a right-to-sue letter.
5 There have been several other Title VII claims litigated against Defendant in this District. (*See,*
6 *e.g.*, *Hodge v. MGM Resorts Int'l*, No. 2:11-cv-01035-GMN-RJJ; *McMunn v. New Castle Corp.*,
7 No. 2:10-cv-00308-PMP-RJJ; *Kam v. New Castle Corp.*, No. 2:09-cv-02325-RCJ-LRL;
8 *Djokovic v. New Castle Corp.*, No. 2:02-cv-01504-RLH-LRL). It is not clear if any of these
9 cases involved a CBA with language similar to that in the present CBA, but the lack of any
10 explicit language of waiver in the present CBA coupled with evidence that other Title VII cases
11 have been litigated against Defendant leads the Court to find no waiver of the right to litigate
12 statutory discrimination claims.

## CONCLUSION

14 IT IS HEREBY ORDERED that the Motion to Dismiss (ECF No. 10) is GRANTED in
15 part. The fourth through sixth claims are dismissed for failure to arbitrate.

16 IT IS SO ORDERED.

17 Dated this 13th day of October, 2011.

_____
ROBERT C. JONES
United States District Judge